IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHAKEEL DAWUD | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | CIVIL NO. 04-1015 (JBS) |
| v. | |
| MURRAY TALASNIK, et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

Mr. Shakeel Dawud
#433063-155146C
Riverfront State Prison
P.O. Box 9104
Camden, NJ 08101
      Plaintiff pro se

James T. Dugan, Esq.
Atlantic County Department of Law
1333 Atlantic Avenue, 8th Floor
Atlantic City, NJ 08401
      Attorney for Defendants

**SIMANDLE**, District Judge:

      Plaintiff Shakeel Dawud, a.k.a. Terrance Harris, formerly
incarcerated at the Atlantic City Justice Facility, brought a
civil rights action pursuant to 42 U.S.C. § 1983 against various
defendants alleging the following claims: (1) failure to protect;
(2) denial of recreation and visitation privileges; (3) denial of
access to the law library; and (4) denial of transfer to another
facility.  Subsequently, this Court issued an Opinion dismissing
all of Plaintiff's claims except the constitutional claim

alleging that Defendants failed to protect Plaintiff from harm in violation of the Eighth Amendment.  Presently before the Court is Defendants' motion for summary judgment seeking dismissal of the remaining claim.  For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

Plaintiff Shakeel Dawud is currently incarcerated at the Riverfront State Prison in Camden, New Jersey serving two concurrent sentences for assault, possession of a firearm and heroin and cocaine possession with intent to distribute.  (Def. Br. at 4.)  Previously, Plaintiff was incarcerated in the general population at the Atlantic County Justice Facility ("ACJF").  (Compl. at 7.)  On May 15, 2002, Mr. Dawud was asked by the Atlantic City Prosecutor's Office to testify in a high profile murder trial.  (Def. Br. at 5.)  The following day, Plaintiff claims that his picture appeared on the front page of the Atlantic City Press with details of his trial testimony accompanying the picture.  (Id.)  Plaintiff alleges that on the night of May 16, 2002, he fought another inmate after the inmate read the Atlantic City Press article and concluded that Mr. Dawud was a "snitch."  (Pl. Opp. at 5.)  Mr. Dawud was charged with "disruptive behavior and/or activity" and "threats to other inmates," according to the ACJF's "Notice of Assignment to High Security Status."  (Def. Ex. J.)  The ACJF officials reassigned

2

him to high security status on May 17, 2002, following the fight
due to his "fighting with another inmate, disrupt[ing] the
housing unit and endanger[ing] other inmates in the area."  (Id.)

In response, on May 20, 2002, Mr. Dawud wrote a note to the
Classification Committee admitting his role in the fight with
inmate Emory Chapman, who had exchanged words with him earlier
that day because Dawud "snitched" on his friends.  (Def. Ex. L.)
He claimed that Chapman took a swing at him and missed, and that
he responded by defending himself and hitting back, ignoring the
directive of a sergeant that he stop, and rationalizing his
conduct as being "due to the built up pressure and stress as a
direct result of having to testify and relive a situation I try
and forget."  (Id.)  Dawud sought return to normal custody,
apologizing for his actions and stating he was "sincerely
remorseful."  (Id.)

On May 24, 2002, Plaintiff was transferred from Pod I, a
maximum security unit, to Pod G, a medium security unit.  (Def.
Br. at 2.)  Defendants maintain that Mr. Dawud was transferred as
a result of his requests to transfer from the high security pod.
(Def. Br. at 2.)  Plaintiff alleges that Pod G was "one of the
most volatile housing units in the ACJF."  (Pl. Opp. at 5.)

Shortly after Plaintiff's transfer, Plaintiff was again
involved in a fight with other inmates on May 24, 2002.  (Def.
Ex. M.)  Defendants maintain that Plaintiff grabbed a broom and

3

began swinging it at the other inmates.  (Id.)  As a result, one
inmate picked up a chair and used it as a shield.  (Id.)
Defendants assert that, according to official accounts of the
incident, Plaintiff was clearly the aggressor and instigator of
the incident.  (Def. Br. at 2.)  However, Mr. Dawud contends that
he was assaulted by several inmates and stabbed in the head with
an unknown object, resulting in an injury requiring several
stitches.  (Pl. Opp. at 5.)

     The incident report includes eyewitness statements from
Officer Voss and from the inmate dorm representative Richard
Davis.  (Def. Ex. M.)  According to Officer Voss, Mr. Dawud was
being transferred into the medium security unit in Pod G-Left
when an argument erupted and Dawud grabbed a broom in the day
space and started to swing it first at the inmate with whom he
had argued, and then at all inmates who were in the area near the
sally port.  (Id.)  One inmate used a chair as a shied against
Dawud, who swung and broke the broom into pieces retrieved by the
officer.  (Id.)  According to inmate representative Davis, it was
Dawud who picked up the broom, and said "I'll kick everyone's
ass."  (Id.)  The inmate with the chair started to back Dawud
into the sally port, and Dawud pushed back and re-entered the day
space (leaving the relative safety of the sally port and emerging
back into the fray that he had initiated), according to Officer
Voss.  (Id. at 2.)  Dawud was taken for medical treatment for

4

bleeding on his head, was interviewed, and refused to give
information.  (Id. at 1.)  He was immediately placed into
protective custody status by Officers Ford and Krick.  (Id.)
Just two days later, on May 26, 2002, Mr. Dawud again wrote to
the Classification Committee seeking to be moved out of
protective custody in Pod I and back into the general population
of Pod F.  (Def. Ex. P.)  This request for reassignment to the
general population was denied by Warden Merline, according to the
notation made thereon.  (Id.)  Even if Plaintiff's recent version
of the May 24th attack is accepted for purposes of this motion,
the precise happenings in this attack are not material.  The
dispositive fact, which is not disputed, is that this transfer
was brought about at Plaintiff's own request and despite
Plaintiff's knowledge that the news article had been the source
of friction directed at him just eight days earlier.

On March 1, 2004, Plaintiff brought a civil rights action
pursuant to 42 U.S.C. § 1983.  This Court subsequently dismissed
Mr. Dawud's Complaint, in part.  The only surviving claim against
Defendants, Merline, Gregg and John Doe, is the allegation that
they failed to protect Plaintiff in violation of his Eighth
Amendment constitutional rights.[1]  Defendants now move for

---

[1]It is not clear from the Complaint whether Mr. Dawud was a
convicted prisoner or a pretrial detainee while confined at ACJF.
With respect to prison conditions, such as a failure to protect
claim, however, pretrial detainees retain at least those
constitutional rights enjoyed by convicted prisoners.  Bell v.

summary judgment alleging that: (1) Plaintiff failed to prove a constitutional violation regarding his failure to protect claim; (2) Defendants cannot be held vicariously liable; (3) Defendants are immune from Plaintiff's claim under qualified immunity; (4) Plaintiff failed to exhaust administrative remedies; and (5) Plaintiff failed to demonstrate an official policy regarding his asserted constitutional claim.  (Def. Br. at 4.)  Each of Defendants' arguments will be evaluated in turn.[2]

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.

---

<u>Wolfish</u>, 441 U.S. 520, 545 (1979); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 187-188 (3d Cir. 1993).  For the sake of convenience, the Court will analyze Mr. Dawud's failure to protect claim under the Eighth Amendment standard.

[2]Since Plaintiff failed to provide this Court with any evidence which identifies the John Doe Defendants or which suggests that John Doe classification officers violated Plaintiff's constitutional rights, the remaining claim against John Doe classification officers will be dismissed.

Id.  Disputes over irrelevant or unnecessary facts will not
preclude a grant of summary judgment.  Id.

In deciding whether there is a disputed issue of material
fact, the court must view the evidence in favor of the nonmoving
party by extending any reasonable favorable inference to that
party; in other words, "the nonmoving party's evidence 'is to be
believed, and all justifiable inferences are to be drawn in [that
party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999)
(quoting Anderson, 477 U.S. at 255).  The threshold inquiry is
whether there are "any genuine factual issues that properly can
be resolved only by a finder of fact because they may reasonably
be resolved in favor of either party."  Anderson, 477 U.S. at
250.

The moving party always bears the initial burden of showing
that no genuine issue of material fact exists, regardless of
which party ultimately would have the burden of persuasion at
trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
"[T]he burden on the moving party may be discharged by 'showing'
– that is, pointing out to the district court – that there is an
absence of evidence to support the nonmoving party's case."
Celotex Corp., 477 U.S. at 325.

The nonmoving party "may not rest upon the mere allegations
or denials of" its pleading in order to show the existence of a
genuine issue.  Fed. R. Civ. P. 56(e).  Plaintiff must do more

7

than rely only "upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985), cert. denied, 474 U.S. 1010 (1985) (citation omitted).  Thus, if the plaintiff's evidence is a mere scintilla or is "not significantly probative," the court may grant summary judgment. Anderson, 477 U.S. at 249-50.

### III. **DISCUSSION**

A.   Constitutional Violation

The Eighth Amendment to the United States Constitution, applicable to individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-346 (1981).  Cruel and unusual punishment is the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  It is well settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."  Id. at 31.

In order to make out an Eighth Amendment claim, an inmate must allege both an objective and subjective component.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation."

Helling, 509 U.S. at 32 (quoting Rhodes, 452 U.S. at 346).  This
component requires that the deprivation sustained by an inmate be
sufficiently serious, for only "extreme deprivations" violate the
Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

Under the subjective component, an inmate must prove that a
prison official acted with deliberate indifference "to a
substantial risk of serious harm."  Farmer v. Brennan, 511 U.S.
825, 828 (1994).  A prison official acts with deliberate
indifference if "the official knows of and disregards an
excessive risk to inmate health or safety."  Id. at 837.  Thus, a
prison official must "both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference."  Id.

However, negligent failure to protect an inmate from an
attack by another inmate does not justify liability under 42
U.S.C. § 1983.  Davidson v. Cannon, 474 U.S. 344, 347-348 (1986).
Indeed, to be found liable under the Eighth Amendment, a prison
official must have a "sufficiently culpable state of mind."
Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 297).
Whether a prison official had the requisite state of mind is a
question of fact which can be established through inferences or
because the risk to an inmate was obvious.  Id. at 842.

Here, Defendants argue that they were not subjectively aware
of a substantial risk of serious harm to Plaintiff because they

9

were not aware of any additional request for protection made by
Plaintiff.  (Def. Br. at 12.)  In fact, the evidence shows that
Plaintiff consistently sought less restrictive housing and escort
services.  On May 2, 2002 and May 18, 2002, Plaintiff requested
that he be removed from escort status.  (Def. Ex. N; Def. Ex. O.)
Then, in a letter dated May 26, 2002, Mr. Dawud asked to be
removed from his current location in a maximum security pod.
(Def. Ex. P.)  On June 16, 2002, Plaintiff again requested that
he be removed from the maximum security pod and noted that there
were "several units which [he could] be placed on with no
problems."  (Def. Ex. Q.)  Indeed, Mr. Dawud even stated that he
would sign a waiver stating that the ACJF would not be liable for
any problems that may occur as a result of his transfer and even
threatened litigation if his pod location did not change by a
specified date.  (Id.)

    Despite all of the above, Plaintiff contends that Defendants
were deliberately indifferent to a substantial risk of serious
harm to Plaintiff because they "willfully ignored" threats to his
safety.  (Pl. Opp. at 12.)  Furthermore, Plaintiff argues that
Defendants should have inferred that it was unsafe for Plaintiff
to be placed in the general inmate population due to his
testimony in the triple homicide trial.  (Id.)

    However, Plaintiff's allegations are insufficient to
withstand a motion for summary judgment.  Mr. Dawud's requests

for less restrictive housing and removal from escort status indicate that he did not believe that his safety was threatened and that he requested the transfer to the general population of which he now complains.  Furthermore, even if the Defendants were negligent in transferring Plaintiff to a different pod or removing him from escort status, as per his request, this is insufficient to establish a claim of deliberate indifference under the Eighth Amendment.  Since Plaintiff has failed to provide this Court with any evidence that Defendants knew of and disregarded a risk of substantial harm to Plaintiff, Defendants' motion for summary judgment will be granted.

B.   <u>Vicarious Liability</u>

      In order for a prisoner to state a claim under 42 U.S.C. § 1983, the prisoner must allege "specific conduct by state officials which violates some constitutional right." <u>Gittlemacker v. Prasse</u>, 428 F.2d 1, 3 (3d Cir. 1970).  Prison officials holding supervisory positions may be held liable if they have "direct responsibility for the actions of the employees who engage in misconduct."  <u>Rizzo v. Goode</u>, 423 U.S. 362, 375-376 (1976).  Supervisory liability can be show in two ways, "either 'through allegations of personal direction or of actual knowledge and acquiescence.'"  <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1478 (3d Cir. 1990).

11

Here, Defendants argue that Plaintiff failed to provide any evidence that Defendants Warden Merline or Captain Gregg were directly involved in the alleged violation of Plaintiff's constitutional rights.  (Def. Br. at 14.)  Plaintiff has not specified any acts of Defendants, or submitted any documents, which may indicate that Defendants Merline or Gregg knew of Plaintiff's alleged complaints about his safety.  (Id.)  Further, Plaintiff does not recall specific encounters or meetings with Warden Merline regarding Plaintiff's safety concerns.  (Id.) Since Mr. Valerio has failed to provide this Court with evidence of Defendants' direct involvement in any alleged acts which violate his constitutional rights, Defendants' motion for summary judgment will be granted.

C.   Qualified Immunity

      "Qualified immunity strikes a balance between compensating those who have been injured by official conduct and protecting government's ability to perform its traditional functions." Wyatt v. Cole, 504 U.S. 158, 167 (1992).  Courts recognize qualified immunity for government officials when it is necessary to "preserve their ability to serve the public good or to ensure that talented candidates [are] not deterred . . . from entering public service."  Id.  In short, qualified immunity acts to safeguard the government and protect the public at large.  Id.

12

In determining whether a defendant is entitled to qualified immunity, this Court must consider: (1) whether the plaintiff alleged a constitutional violation; (2) whether the alleged violated right was clearly established in existing law at the time; and (3) whether the official knew or should have known that the alleged action violated the plaintiff's constitutional rights. Rouse v. Plantier, 182 F.3d 192, 196-197 (3d Cir. 1999). When a defendant asserts a defense of qualified immunity on a motion for summary judgment, "the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right. Only if the plaintiff bears this initial burden must the defendant then demonstrate that no genuine issue of material fact remains." Donahue v. Gavin, 280 F.3d 371, 378 (3d Cir. 2002).

Here, Plaintiff alleges that Defendants violated his constitutional rights by failing to protect him. While Plaintiff correctly asserts that inmates are afforded constitutional protections while incarcerated, he fails to provide sufficient evidence that Defendants acted in such a manner as to violate these established rights. Plaintiff himself believed he was safe, even after the May 16th publication of the news article, in the general population. If follows that a reasonable officer in Defendants' position under these circumstances could reasonably believe that the decision to return Plaintiff to the general

13

population on May 24th was not a violation of the duty to protect
from a known risk of harm.  Since Plaintiff cannot merely rely on
conclusory allegations to withstand a motion for summary
judgment, Defendants' motion for summary judgment on the basis of
qualified immunity will be granted.

D.    Administrative Remedies

      Under, the Prison Litigation Reform Act ("PLRA") "no action
shall be brought with respect to prison conditions under section
1983 of this title, or any other Federal law, by a prisoner
confined in any jail, prison or other correctional facility until
such administrative remedies as are available are exhausted."  42
U.S.C. § 1997e(a).  Complaints that corrections officers failed
to protect an inmate from another prisoner involve "prison
conditions" within the meaning of PLRA because they "concern
everyday aspects of an inmate's life in prison."  Brady v.
Attygala, 196 F. Supp. 2d 1016, 1019 (D. Cal 2002) (citing Porter
v. Nussle, 534 U.S. 516 (2002) ("The PLRA's exhaustion
requirement applies to all inmate suits about prison life.")).

      The PLRA's exhaustion requirement applies to all inmate
suits "about prison life, whether they involve general
circumstances or particular episodes, and whether they allege
excessive force or some other wrong."  Porter, 534 U.S. at 532.
Furthermore, exhaustion of all administrative remedies is
mandatory whether or not the inmate believes such administrative

14

remedies to be effective.  Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000).  Specifically, in Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000), a prisoner's assertions that there are "no available administrative remedies" and, alternatively, that "any administrative remedies that are claimed to exist are in fact a sham" did not excuse prisoner from the statutory exhaustion requirement.

       Here, Defendants contend that Mr. Dawud received a handbook upon arrival at the ACJF which stated that a "prisoner may file a complaint regarding the conditions of his or her confinement and may appeal any decision to the warden of the facility."  (Def. Br. at 19.)  However, Defendants argue that Plaintiff did not file an administrative complaint and therefore failed to comply with PLRA's exhaustion requirement.  (Id.)  Plaintiff contends that his "fervent and passionate letters throughout his stay in the ACJF stand as an effective exhaustion of [the] administrative remedies" available to him.  (Pl. Opp. at 14.)  Further, Mr. Dawud contends that his "administrative efforts have gone unheeded" and that the administrative process is "invariably flawed" and thus, difficult for a inmate to prevail under the system.  (Id.)

       As noted supra, the statutory exhaustion requirement is mandatory regardless of an inmate's belief as to the effectiveness of the process.  Furthermore, Plaintiff failed to

15

provide this Court with any evidence of his attempts to avail himself of the administrative process.  Under <u>Concepcion v. Morton</u>, 306 F.3d 1347 (3d Cir. 2002), the PLRA's exhaustion requirement applies to grievance procedures in an inmate handbook.  According to the ACJF handbook, a prisoner may file a complaint regarding the conditions of his or her confinement and should appeal any decision directly to the warden of the facility.  (Def. Br. at 19.)  Plaintiff's letters, dated May 26, 2002 and June 16, 2002, do not amount to grievances for purposes of exhaustion because there is nothing in the letters that accuses prison officials of failing to protect him from the May 24, 2002 retaliation.  To the contrary, his letters asked the ACJF to move him back into the general population because he saw no danger in being transferred to a less secure pod.  Even if such letters were considered a grievance, Plaintiff acknowledged that he did not file an appeal with the warden of the facility.  (Def. Ex. C 115:19-25; 116:1-2.)  Since Mr. Dawud failed to properly avail himself of the administrative process, his failure to protect claim will be dismissed pursuant to 42 U.S.C. § 1997e(a).

E.   <u>Prison Policy</u>

     A municipality can only be liable under 42 U.S.C. § 1983 when "the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by

the governing body or informally adopted by custom." <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996) (citing <u>Monell v. New York City Dept. of Soc. Servs.</u>, 436 U.S. 658 (1978)).  A government policy is made "when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." <u>Id.</u> (quoting <u>Andrews</u>, 895 F.2d at 1480).  Conduct constitutes custom "when, though not authorized by law, 'such practices of state officials [are] so permanent and well-settled' as to virtually constitute law." <u>Id.</u> (quoting <u>Andrews</u>, 895 F.2d at 1480).

Here, Plaintiff fails to allege that a policy or custom of Atlantic County caused or contributed to the alleged constitutional violation.  In fact, Atlantic County has adopted policies and procedures that address inmate safety. Specifically, Atlantic County has adopted a classification policy which places inmates in housing based on an "objective classification system." (Def. Ex. D.)  Through this system, a custody level - minimum, medium or maximum - is assigned to each inmate and the inmate is then accordingly placed into an assigned area.  (<u>Id.</u>)  Under this policy, classification and reclassification is an ongoing process which can occur at various intervals during an inmate's incarceration.  (<u>Id.</u>)  The goal of the classification system is to "reduce conflicts among inmates

17

and minimize management difficulties between inmates and personnel in the facility."  (<u>Id.</u>)

The classification policy at ACJF does not violate Mr. Valerio's constitutional rights because it seeks to protect inmates.  Thus, Plaintiff failed to provide this Court with evidence of a custom or policy that contributed to the alleged constitutional violation.  Since Mr. Valerio cannot withstand a motion for summary judgment by merely relying on the asserted allegations in his pleadings, Defendants' motion for summary judgment will be granted.

## IV. <u>CONCLUSION</u>

For the reasons expressed in this Opinion, the motion for summary judgement by Defendants Warden Merline and Captain Gregg will be granted.

**August 4, 2005**              **s/ Jerome B. Simandle**
DATE                            JEROME B. SIMANDLE
                                United States District Judge